IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2019

## STATE OF TENNESSEE v. NICHOLAS TYLER BECKHAM

**Appeal from the Circuit Court for Cheatham County**
**No. 18134     Larry J. Wallace, Judge**

_____

### No. M2018-02027-CCA-R3-CD

_____

The Cheatham County Grand Jury indicted Nicholas Tyler Beckham, Defendant, on twenty-three counts of aggravated sexual exploitation of a minor. Pursuant to a plea agreement, Defendant pled guilty to counts one through five, with an agreed sentence of five years on each count, counts one through four to be served consecutively, with count five to run concurrently to count four, for an effective sentence of twenty years at thirty percent, with the manner of service to be determined by the court. The remainder of the counts were dismissed. Following a sentencing hearing, the trial court ordered Defendant to serve his sentence in the Tennessee Department of Correction. On appeal, Defendant claims the trial court abused its discretion when it denied alternative sentencing for Defendant. After a thorough review of the record and applicable case law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

William B. Lockhart, III, District Public Defender, and Matthew T. Mitchell, Assistant District Public Defender, Ashland City, Tennessee, for the appellant, Nicholas Tyler Beckham.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Margaret F. Sagi and David Wyatt, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Sentencing Hearing

Teresa Geas testified that she was employed with the Tennessee Department of Correction Board of Probation and Parole and that she prepared a presentence report for Defendant. The report provided no information asserted by the parties relating to mitigating factors or enhancement factors. Ms. Geas stated that she received the State's enhancement factors after she had prepared her presentence report.. On cross-examination, Ms. Geas testified that Defendant was eighteen years old at the time of the offenses and that, based on his risk assessment, Defendant had a moderate risk of re-offending. Ms. Geas agreed that she did not know why Defendant was placed in the moderate category when all but one of the risk assessment sub-categories presented as low risk. On redirect examination, Ms. Geas stated that the risk assessment did not take into consideration Defendant's possible depression, pedophilia, or access to small children.

Detective Timothy Palchak testified as an expert in the investigation of child exploitation. Detective Palchak said he was a member of the FBI's Child Exploitation Task Force at the Washington, D.C. Field Office. He stated that he began specialized law enforcement training in the year 2000 when he began working with the FBI's child abuse unit.

Detective Palchak testified that, while working as an undercover task force officer, he came into contact with Defendant online. Defendant saw Detective Palchak's posts online, on a mobile application called "KiK," in group forums about pedophilia and incest. Defendant contacted Detective Palchak online using Defendant's KiK screen name "abbissupergirl." Defendant told Detective Palchak that he was an eighteen-year-old male who lived in Indiana and that he liked to "play with [his] younger sisters[.]" Defendant told Detective Palchak that he "do[es] anal" with his five-year-old sister.

Defendant asked Detective Palchak if he would like to see pictures, and Detective Palchak answered affirmatively. Defendant sent Detective Palchak three pictures via KiK, as detailed in the Incident Report:[1]

> 1. An image of a nude prepubescent female child with her legs spread exposing her bare vagina. Defendant told Detective Palchak that this picture was of an eight-year-old girl.

---

[1] Detective Palchak prepared the Incident Report on December 8, 2016. The Incident Report was admitted as Exhibit 4 to the Sentencing Hearing.

2. An image of a nude prepubescent female with a penis inserted into the child's anus. Defendant told Detective Palchak that this picture was of a five-year-old girl.

3. An image of a nude prepubescent female from the vagina down to her anus, legs spread, with a penis inserted into the child's anus.

Detective Palchak then gave Defendant his undercover cell phone number, and Defendant contacted Detective Palchak via text message. Defendant sent eleven additional pictures to Detective Palchak's undercover cell phone, as detailed in the Incident Report:

1. An image of a prepubescent child lying on a burgundy sheet with her legs spread exposing her bare vagina. An erect penis is near the child's vagina but not touching it. The image focuses on the child's vagina, and no face is visible.

2. An image depicting a prepubescent child spreading her bare vagina open.

3. An image of a prepubescent child on all fours exposing her bare buttocks and vagina.

4. An image of a prepubescent child spreading her legs open and exposing her bare vagina. The image is taken from the waist down.

5. An image of a female child wearing a multi-colored shirt and no panties. The child's hand and fingers are on her bare vagina.

6. The same child as the previous (photo 5). The child is touching her bare vagina with her fingers, and a penis is near her vagina.

7. The same child as the previous (photo 6). The child is inserting her finger into her bare vagina.

8. An image depicting a male spreading the vagina of a prepubescent child with his fingers.

9. Three images depicting a male inserting his penis into a prepubescent child's anus.

At Detective Palchak's request, Defendant sent him a picture of "half [of] the face of the girl that was described in the images." Based on the picture of the child's face, Detective Palchak estimated that the child was between seven and ten years old. Detective Palchak asked Defendant if he obtained the pictures from the internet, and Defendant agreed that he had. Defendant told Detective Palchak, "I do have sisters, I just don't take pics. . . . I've licked [the eight-year-old's] p***y and fingered her butt." Then Defendant sent a non-pornographic picture of a child he claimed to be his sister.

Following this series of communications, Detective Palchak worked with another FBI agent to identify Defendant as the user of the KiK username "abbissupergirl." After obtaining Defendant's name and address, Detective Palchak contacted the local FBI office because he was concerned that "there was a kid in jeopardy" since Defendant sent a picture of a set of panties at his residence.

On cross-examination, Detective Palchak clarified that Defendant stated he never took pictures of the two girls purported to be his sisters but that Defendant claimed he "did things" to the girls while they were sleeping. On redirect-examination, Detective Palchak stated that, based on his communications with Defendant, Defendant was looking for "homemade child pornography[,]" but Detective Palchak was unable to ascertain whether Defendant's disclosures of abuse were true.

Kenneth Ray testified that he was the Assistant Police Chief with the Ashland City Police Department. Detective Ray obtained a search warrant for Defendant's home on Batson Street in Ashland City. When officers arrived, there were "some underage children" at the home, appearing to be between five and eight years of age. Detective Ray identified one of the children present in the home as the same child in the non-pornographic image that Defendant sent to Detective Palchak. Detective Ray stated that he and the other officers obtained several electronic devices, as well as some children's panties, which matched the panties in the images that Defendant sent to Detective Palchak. Detective Ray said that the FBI report on a cell phone that was recovered from Defendant's residence stated that the cell phone had been "wiped remotely."

Detective Ray testified that Defendant accompanied the officers back to the police department and, following *Miranda* warnings, Detective Ray and another detective questioned Defendant. Defendant told the detectives that "he had been exchanging information with someone on the internet and sending pictures, and he disclosed that he had a preference for children, young girls, between the ages of [eight] and [ten]." Defendant also disclosed that he had been viewing internet pornography for "about two years" and admitted to "masturbating to the pictures." Detective Ray stated that forensic interviews were conducted on the minor children found in Defendant's home and that neither child disclosed any abuse.

On cross-examination, Detective Ray testified that none of Defendant's DNA was found on any of the items belonging to the children. On redirect examination, Detective Ray stated that, in the stationhouse interview, Defendant explained that he preferred young girls "before they had hair[.]"

Michelle Binkley testified that she worked for PSI Probation in Charlotte. Ms. Binkley stated that she placed a GPS monitor on Defendant's ankle on March 20, 2018, shortly after Defendant submitted a guilty plea, as a condition of Defendant's remaining released on bond. She told Defendant to keep the GPS monitor's battery charged at all times. Ms. Binkley said that Defendant was supposed to be on the sex offender registry after his guilty plea submission; thus, Defendant was not allowed near schools, parks, or childcare facilities. Ms. Binkley stated that, on March 21, 2018, Defendant was tracked to a residence on Achievement Drive in Nashville, three tenths of a mile from an elementary school. The same day, Defendant was tracked to a park near a middle school and a youth community center. On March 25, 2018, Defendant's battery died, and his tracking device stopped working. Approximately twenty-two hours later, Defendant's GPS monitor began tracking again. When Ms. Binkley noticed that Defendant had failed to register as a sex offender, she contacted the District Attorney's office and provided them information with Defendant's movements. Due to his failure to comply with the requirements of his plea agreement as a sex offender, Defendant's bond was revoked.

Barbara Stevenson testified that she worked for the Tennessee Department of Correction Board of Probation and Parole in Cheatham County. Officer Stevenson stated that she worked with Kathleen High, who was a "sex offender officer." Officer Stevenson said that Officer High "swore out a warrant based on a sex offender registry violation" because Defendant failed to register as a sex offender within forty-eight hours of the trial court's acceptance of his guilty plea.

Dr. Kimberly Brown testified that she had a Ph.D. in clinical psychology with a specialization in law. Dr. Brown stated that she was board-certified in forensic psychology and that she did an internship in forensic psychology at Napa State Hospital in California and a post-doctoral fellowship in forensic psychology at the University of Washington. Dr. Brown stated that she worked for Vanderbilt University Medical Center as an associate professor in the department of psychiatry and as the director of the forensic evaluation team. Dr. Brown testified that she evaluated Defendant using four tests and eight research-based risk factors for "child-pornography-only" offenders.

Dr. Brown stated that the risk factors present in this case included (1) that Defendant was very young at the time of the offense, (2) that Defendant violated the terms of his bond, and (3) that Defendant was sexually aroused by children. Dr. Brown stated that the risk factors absent in this case included (1) that Defendant had no known

sexual offense contacts against children or adults, (2) that Defendant had no prior criminal history, (3) that Defendant had no known violent history, (4) that Defendant did not consider criminal activity to be acceptable, and (5) that Defendant had only female child pornography rather than both male and female pictures. Based on these factors, Dr. Brown diagnosed Defendant with pedophilia disorder.

To determine whether Defendant's condition was treatable, Dr. Brown considered Defendant's social support from friends and family, his romantic relationship with an adult female, Defendant's lack of substance abuse, his lack of minimizing the harm of his offenses, and the fact that Defendant committed these offenses while in a "major depressive episode" shortly after his best friend's murder in April 2016. Dr. Brown also considered that Defendant was "not very expressive[,]" which would not facilitate treatment, and that another major depressive episode may increase his risk of re-offending. Dr. Brown stated that she could not predict Defendant's success in treatment. Dr. Brown also noted that Defendant was on bond for one year and four months prior to pleading guilty and that, during that time, Defendant had no offenses. She stated, "[W]e know that the longer people are offense[-]free in the community, the greater their risk is reduced exponentially[.]" She further noted that, while a young age can be a risk factor for re-offending, Defendant's

> brain [was] still not even fully developed [at the time of the offenses]. So [Defendant was] more at risk to be impulsive, to use poor judgment, to not exercise good decision-making. With continued development of his brain, the -- he should make better choices. That's the natural development of a brain. So I think his age of [eighteen] at the time [of the offense] is significant.

Dr. Brown noted several inconsistencies between what Defendant told her and what Defendant told officers during his interrogation. Specifically, Defendant told Dr. Brown that he had no sexual interest in children, but he told detectives that he had a "fetish for young girls[.]" Defendant also told Dr. Brown that he had been looking at pornography for two years, "not necessarily child pornography," but he told detectives that he "had been viewing these types of images for two years." Dr. Brown indicated that these inconsistencies show that Defendant was "somewhat defensive and guarded [and that he] kind of glosses over things and doesn't want . . . to see himself as having a problem. Admits to what he did, but doesn't think it's indicative of a larger problem." Dr. Brown then stated that, based on current research, there is no relation between a Defendant's refusal to admit he has a problem and his risk to re-offend. She said that there was no difference in the risk of re-offending "between admitters and deniers, but it does affect participation and amenability for treatment."

- 6 -

On redirect examination, Dr. Brown concluded that, because Defendant had no contact offenses in the past, Defendant was at low risk for a contact sexual offense against a child. On re-cross-examination, Dr. Brown stated that, when Defendant talked to Detective Palchak online about "doing things" to his sisters, "it [was] just a part of the sexual fantasies that are part of the [pedophilic] disorder[.]"

Defendant testified that he was a high school graduate and that he was arrested on December 9, 2016. Defendant said that he told Detective Ray that he viewed images of child pornography and that he sent some of those images to Detective Palchak. Defendant stated that he was in jail for seven weeks after his arrest before he was released on bond and that he remained released on bond for "a year and a half, give or take[.]" He said that, while he was released on bond, he was not charged with any other offense. In March of 2018, Defendant submitted guilty pleas in counts one through five and reported to Ms. Binkley to receive an ankle monitor on March 20, 2018. Defendant stated that he was not aware that he only had forty-eight hours after submission of his guilty plea in which to register as a sex offender. He said that he understood that he had to inform Ms. Binkley of his residence, even if he moved for only a short time. Defendant agreed that he told Ms. Binkley he would be living with his grandfather and that, for two days after he received his ankle monitor, he was staying at a friend's house because he was going to work with his friend's father.

Defendant testified that he was "disgusted" by the charges and "disappointed" in himself. He said he felt "sorry" for the girls in the pictures and that he "kind of threw [his] life away just making a stupid mistake like that." Defendant stated that he knew his sentence would be for twenty years and that he was asking the court to "give [him] an opportunity on community corrections."

On cross-examination, Defendant stated that he accessed child pornography in nine or ten sessions within two years. He said that he would search for child pornography on Google and in pedophilia forums online which would direct him to a file-sharing site. Defendant bookmarked a page of child pornography which had thirty to forty images. Defendant testified that, before his friend's murder in April 2016, he accessed child pornography once every two months. After his friend's murder, he would view child pornography during his free time for "a day or two straight" at a time. From the time Defendant graduated from high school in May 2016 until he was arrested in December 2016, Defendant was not working or attending school but spent his days watching television, playing games, and looking at child pornography. Defendant admitted that some of the pictures that he sent to Detective Palchak depicted "molestation and rape[.]" Defendant stated that people who take such pictures should go to prison and that people who view such pictures and "don't want to stop" should also go to prison.

- 7 -

On cross-examination, Defendant stated that he was sixteen years old when he started viewing pornography. He said that he knew he "had a long way to go" with maturity and that he wanted to change. Defendant said that, when the GPS tracked him to a park near a school, he was picking up a friend from the youth center who had been playing basketball. On redirect examination, Defendant stated that, when he viewed the pictures of child rape, he "didn't think about the people" in the pictures but that he now understood that "what [he] did [was] wrong and why that's so wrong." He stated that he took the picture of his cousin's panties and sent it to Detective Palchak because he was consumed with "want[ing] to get pictures" and because he "wasn't really thinking at the time."

Upon examination by the trial court, Defendant testified that he told Detective Palchak "I like to play with my younger sisters" because he thought that was what he needed to say to get more pictures. Defendant stated that, the first time he viewed pornography, it was "regular" pornography of adults. After a few months, Defendant decided to seek out child pornography because he "thought it was more erotic, more taboo." Defendant testified that he was not sorry he "got caught" because it brought his family closer together and that they started attending church again. Defendant assured the court that, if the court imposed alternative sentencing, Defendant would not re-offend. Defendant stated, "I know what it's like to be away from my family, and I don't want to have to feel that again. I don't want to punish them for what I do, make them have sleepless nights . . . crying for me." Defendant told the court that, after his guilty plea submission, he failed to register as a sex offender because he believed that someone would contact him when it was time to register. He also stated that he "didn't think it was that big a deal" for him to spend two nights at a friend's house after he told Ms. Binkley he resided with his grandfather. Defendant said that he did not view or discuss child pornography while staying at his friend's house.

Defendant stated that he masturbated to the pictures of children "just for the thrill" but that he did not "feel like [he] was the person doing the acts to . . . the individual in the picture[.]" Defendant testified that he "kind of felt bad" and "scared" when he sent Detective Palchak a picture of his cousin, so he "stopped and blocked" Detective Palchak's number. Defendant agreed that child pornography "hurts kids" and that viewing it creates a demand for it.

Following closing arguments, the trial court placed on the record its findings regarding sentencing factors. The trial court applied with substantial weight enhancement factor (3), that there was more than one victim, because "even though it's not a direct-contact victim like where somebody gets assaulted or raped or something like that directly, this behavior helps fuel the industry and leads to more victims being victimized[.]" Tenn. Code Ann. § 40-35-114(3) (2018). The trial court applied with little

weight enhancement factor (1), history of criminal behavior, because even though Defendant had no criminal record, Defendant testified to looking at child pornography for two years prior to his arrest. Tenn. Code Ann. § 40-35-114(1) (2018). The trial court then applied with substantial weight enhancement factor (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, because Defendant admitted to masturbating to the images. Tenn. Code Ann. § 40-35-114(7) (2018).

Defense counsel requested that the trial court consider mitigating factors (1), (6) and (13). The trial court declined to apply mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, because "the conduct does cause serious bodily injury in future situations because, again, it fuels the industry of child pornography." Tenn. Code Ann. § 40-35-113(1) (2018). The trial court applied mitigating factor (6), that the defendant lacked substantial judgment in committing the offense due to young age. Tenn. Code Ann. § 40-35-113(6) (2018).

The trial court noted that Defendant was not statutorily eligible for probation under Tennessee Code Annotated section 40-35-303(a) because Defendant was convicted of aggravated sexual exploitation of a minor pursuant to Tennessee Code Annotated section 39-17-1004. However, the trial court agreed that Defendant was eligible for community corrections. Nevertheless, the trial court found that confinement was "necessary to avoid depreciating the seriousness of the offense or confinement is especially suited to provide an effective deterrence to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1)(B) (2018). The court stated:

> [T]he Court does consider that there's a high deterrence value regarding this particular offense, part of that is the fact that the public needs to know and understand that –. . . [D]efendant's actions . . . are continuing to encourage individuals to take pictures and put them on the internet of children under the age of [eighteen] in sexual activity -- or simulated sexual activity. And, of course, society should not tolerate that. You know, child pornography is about as serious as it gets. It says, before the judge can deny alternative sentence for deterrence, there must be some proof that the sentence will have a deterrent effect. It says, to find a deterrence cannot be merely conclusionary, [sic] but child sex cases seem to be listed as an exception here, based on case law. Those offenses by their very nature need no extrinsic proof to establish the deterrent value of punishment.

In denying alternative sentencing, the trial court also considered that "measures less restrictive than confinement have . . . recently been applied unsuccessfully to the

defendant" because Defendant violated the terms of his bond after his guilty plea submission. Tenn. Code Ann. § 40-35-103(1)(C) (2018).

The trial court stated that Defendant did not meet his burden to establish that alternative sentencing "will subserve the ends of justice and be in the best interest of both the public and [D]efendant." The trial court stated that "the nature and circumstances of the criminal conduct involved . . . paint a terrible picture." *See* Tenn. Code Ann. § 40-35-210(B)(4) (2018). Moreover, the trial court found that Defendant lacked "potential for rehabilitation[,] including the risk that during the period of . . . alternative sentencing [D]efendant will commit another crime" because Defendant did not comply with the conditions of his bond after he submitted a guilty plea. *See* Tenn. Code Ann. § 40-35-103(5) (2018). The trial court denied alternative sentencing and imposed a sentence of twenty years' incarceration at thirty percent. This timely appeal now follows.

## Analysis

Defendant argues that the trial court abused its discretion when it found that alternative sentencing was "not sufficient as punishment in this case." Defendant contends that the trial court "did not fully consider the arguments as to sentencing alternatives." Further, Defendant asserts that the trial court did "not consider[] the guiding purposes and principles of sentencing[.]" Defendant emphasizes that his "argument that the [t]rial [c]ourt misapplied sentencing factors is but a part of the [t]rial [c]ourt's overall failure to properly account for the purposes and principles of sentencing." Finally, Defendant argues that incarceration is "not the least severe measure necessary to achieve the purpose of the sentence."

The State responds that incarceration is appropriate in this case because Defendant exchanged child pornography online and also refused to comply with the conditions of his bond release.

We first note that the record on appeal does not contain the guilty plea submission hearing transcript. The absence of the guilty plea submission hearing transcript is particularly important because

> [f]or those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

*State v. Keen,* 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) (citations omitted).  It is Defendant's duty to prepare the record "as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues which are the bases of appeal."  Tenn. R. App. P. 24(b).  "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue."  *State v. Ballard,* 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)).  However, "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in [*State v. ]Bise.*"  *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

Here, the State concedes, and we agree, that the record is sufficient for meaningful review in this matter because seven witnesses testified at the sentencing hearing and the exhibits to the hearing included the evidence that would have been presented at trial.  Therefore, we will address Defendant's claims on the merits.

The sentence range for a Range I standard offender, convicted of a Class C felony, is three to six years.  *See* Tenn. Code Ann. § 40-35-112(a)(3) (2018).  When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness.  *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).  The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper.  Tenn. Code Ann. § 40-35-401 (2018), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen.  Tenn. Code Ann. § 40-35-210(e) (2014); *Bise,* 380 S.W.3d at 706.  While the trial court should consider enhancement and mitigating factors, such factors are advisory only.  *See* Tenn. Code Ann. § 40-15-114 (Supp. 2015); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).  A trial court's "misapplication of an enhancement or mitigation factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005."  *Bise*, 380 S.W.3d at 706.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent

- 11 -

felony offenders." Tenn. Code Ann. § 40-36-103(1) (2018). Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

*Id.* § 40-36-106(a)(1)(A)-(F) (2018).

Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d) (2018).

In his brief, Defendant does not explain which sentencing factors the trial court misapplied or how it misapplied them, nor does Defendant explain which purposes and principles of sentencing the trial court misapplied or how it misapplied them. Defendant appears to claim that incarceration was inappropriate in this case because incarceration was "not the least severe measure necessary to achieve the purpose of the sentence." *See* Tenn. Code Ann. § 40-35-103(4) (2018).

In *State v. Jessica Tramel*, the defendant complained that the trial court failed to consider Tennessee Code Annotated section 40-35-103(4) and (6) when it decided against alternative sentencing. No. E2015-00694-CCA-R3-CD, 2016 WL 3570371, at *9

(Tenn. Crim. App. June 23, 2016), *perm. app. denied* (Tenn. June 23, 2016). In affirming the trial court, this court found that

> [t]he trial court's extensive explanation for denying the appellant's request for alternative sentencing demonstrates that the court carefully considered the principles applicable to sentencing. The court went into great detail, explaining why each factor weighed in favor of or against an alternative sentence. The court found that very few factors weighed in favor of the appellant's request.

*Id.* In the same way, the trial court in the present case did not expressly address Tennessee Code Annotated section 40-35-103(4) in its determination against alternative sentencing. However, the trial court "went into great detail, explaining why each factor weighed in favor of or against an alternative sentence." *Id.* In this case, the trial court considered factors set out in code sections 40-35-210, 40-35-113, 40-35-114, 40-35-103, and 40-35-303 and stated on the record the reasons for the sentence it imposed. Thus, the trial court's sentencing decisions are entitled to a presumption of reasonableness, and Defendant has failed to establish any abuse of discretion. He is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE